*5 Buch.* Weber *v.* Nichols.

FRANK F. WEBER

*v.*

EDWIN C. NICHOLS et al.

[Submitted December 1st, 1908. Decided December 9th, 1908.]

1. Upon a bill filed by a stockholder, not only on his own behalf but also on behalf of all the stockholders of an insolvent corporation who are situated similarly to himself, after its affairs had been wound up by a receiver, against the receiver and the other stockholders, for the purpose of having the court declare the equities of the shareholders among themselves with respect to the surplus remaining in the receiver's hands admittedly belonging to the shareholders, the defendants having moved under rule 213 to strike out the bill for the following (amongst other) reasons: (1) Because the relief prayed for cannot be awarded in a suit brought by a stockholder; (2) because there is no allegation that the receiver was requested to bring the suit, nor of his refusal to do so; (3) for want of equity.—*Held,* that the bill is good, because the complainant is not attempting to enforce a cause of action which runs to the corporation, but one which affects only the stockholders as between themselves.

2. The bill in this case must be treated as one the object of which is to provide for the distribution of the fund in the hands of the receiver, and it is no objection that no specific prayer to that end was appended to the bill, that appearing to be the purpose and object of the suit.

3. The admission of fraud charged in the bill which is involved in the form of this motion to strike out disposes of the two remaining objections taken to the bill, the particulars of which objections are set forth in the opinion.

4. If there was in fact the fraud which is alleged, the complainant is not estopped from objecting to the questioned transaction or from demanding the cancellation of shares issued in pursuance of it, nor does it involve a rescission of the questioned contract or a restoration of conditions, as claimed in such remaining two objections comprised in the notice of the motion.

On motion to strike out bill of complaint under rule 213.

*Mr. Halsey M. Barrett* and *Mr. Randolph C. Barrett,* for the motion.

*Mr. Edward M. Colie* and *Mr. Jerome D. Gedney, contra.*

HOWELL, V. C.

The bill in this case is filed by the complainant not only on his own behalf, but on behalf of all the stockholders of the Zonite Manufacturing Company, who are situated similarly to himself, for the purpose of having this court declare the equities of the shareholders among themselves under the following circumstances.

The company was organized under the General Corporation law on December 10th, 1904, with a capital of $500,000 divided into five thousand shares of the par value of $100 each. On that day the defendants, Nichols, Taylor, Stewart, Hopkins and Heller became stockholders and directors; at this first meeting they voted to purchase from Nichols an undivided one-half interest in a United States patent and all the interests in two pending applications for United States patents covering methods of manufacture and distribution of sterilized air for refrigeration and other like purposes, together with any and all improvements that might be in the future devised or invented by Nichols, for which patents and applications all the capital stock

was issued to him. He retained for himself and his immediate associates three thousand eight hundred and ninety-five shares, and transferred to the company, to be held as treasury stock, one thousand one hundred and five shares. This transaction was made the subject-matter of an agreement in writing bearing date on the same day, a copy of which is annexed to the bill.

Of the treasury stock six hundred and thirty shares of the par value of $63,000 were sold by the company for cash at par to the complainant and other persons, the complainant being now the owner of twenty-nine shares thereof for which he paid the sum of $2,900 to the company in 1905 and 1906.

The company carried on its operations until October 22d, 1907. On that day it was adjudged to be an insolvent corporation and a receiver was appointed for its assets, who has wound up its affairs, paid its creditors in full and now has in hand a surplus of $14,000, which admittedly belongs to the shareholders.

The bill alleges that when the patents and applications for patents were transferred to the company they were of little or no value; that they were not worth the $500,000 which the company paid for them in stock; that the property was grossly overvalued by the directors for the purpose of committing a fraud on all persons who might subsequently become stockholders; that the transaction was intended as a mere gratuity to Nichols, and that the company did not purchase or receive from the said Nichols any property such as is required to be received or purchased by the laws of this state under which the corporation is organized as the basis of a legal issue of capital stock for property purchased.

The bill likewise alleges that three thousand eight hundred and ninety-five shares of the company's stock which was originally reserved by Nichols was subsequently divided up by him among the directors above mentioned and other persons, all of whom are made parties defendant to the suit. The prayer for relief is that the defendants may be restrained from selling, pledging or transferring, or attempting so to do, any of the said shares, and from collecting or receiving any dividend upon the said shares upon a distribution of the estate of the said Zonite

Manufacturing Company, and that the receiver, who is also a party, may be directed by the order of this court not to make any distribution upon the estate of the company to the defendants on account of the shares of stock so illegally and fraudulently issued to them. There is likewise a prayer that these shares be canceled and the certificates evidencing them surrendered to the receiver for that purpose and that the defendants may be decreed to have no interest or right as stockholders in the said company.

The defendants now move, under rule 213, to strike out the said bill for the following reasons—*first,* because the relief prayed for cannot be awarded in a suit brought by a stockholder; *second,* because the complainant became a stockholder after the transaction of December 10th, 1904, and is therefore estopped from objecting to the Nichols contract and from applying for the cancellation of the shares of stock issued in pursuance of it; *third,* because there is no allegation that the receiver was requested to bring the suit, nor of his refusal to do so; *fourth,* because the relief prayed for involves the rescission of the Nichols contract without the ability to restore the former conditions; *fifth,* want of equity.

The first, third and fifth objections are disposed of by the case of *Bacon* v. *Robertson, 18 How. 480.* There certain stockholders of an insolvent bank, whose affairs were being wound up by a trustee, brought suit against the trustee and other stockholders to compel a distribution of the surplus remaining in the hands of the trustee after the payment of all the debts of the corporation. There was a demurrer to the bill which was sustained by the circuit court, but the judgment was overruled by the supreme court on appeal, and the bill was approved. As to the three objections above mentioned the bill is good and the reason is that the complainant stockholder is not attempting to enforce a cause of action which runs to the corporation, but one which affects only the stockholders as between themselves. So long as no other stockholder joins him he is defending alone what he considers to be his individual and personal right against the claims of persons who he says have attempted to defraud him. Neither does this action by the complainant affect the rights of the re-

ceiver. While the receiver might institute some proceeding which would result in the litigation of the questions now before the court, after all the real contention would be between the stockholders and they would be ranged as they are in this suit, and the receiver would stand as a mere stakeholder.

I think I must treat the bill in this case as one whose object is to provide for the distribution of the fund in the hands of the receiver. Objection was made at the argument that no specific prayer to that end was appended to the bill, but notwithstanding its absence I think that that appears to be the purpose and object of the suit. The statute, section 86 of the Corporation act of 1896, makes provision for the distribution by receivers of the assets of corporations which shall come to their hands. After the payment of debts and expenses what is left is called the "surplus funds;" these funds, after the payment of the creditors and the costs, expenses and allowances and the preferred stockholders, shall be divided and paid to the general stockholders proportionately according to their respective shares.

The incorporation papers have not been laid before the court, presumably because they contain no reference to the manner of the distribution of the surplus; there appear to be no adjudications in our state which can be used as a guide.

I think the strength of this bill lies in the allegations of fraud. In the absence of that element, the statutory direction to divide the surplus among the general stockholders proportionately according to their respective shares would necessarily govern. In the scheme of the law of corporations it is contemplated that all stockholders who belong to the same statutory class shall stand on an equality as to rights, privileges, duties and liabilities, and that between members of the same class there shall be no preferences.

On December 10th, 1904, when Nichols held three thousand eight hundred and ninety-five shares of the company's stock and there were one thousand one hundred and five shares in the treasury, these individual shares stood on a par with each other and the situation was not changed when the company disposed of its so-called treasury stock. There was then no idea of calling

upon Nichols and his immediate transferees to pay up anything further on their shares, and if the operations of the company had resulted in a profit it could hardly be claimed under the circumstances that the profits should have been distributed only among those shareholders who paid cash at par for their shares, omitting Nichols and his transferees. The situation is illustrated by the case of *Birch* v. *Cropper* (*1889*), *14 A. C. 525; 59 L. J. Ch. 122,* decided under the provisions of section 133 of the Companies act of 1862, which directs that after payment of the company's liabilities the property shall be distributed amongst the members according to their rights and interests in the company, and that the liquidators should adjust the rights of the contributories amongst themselves. That was a case growing out of the construction of the Manchester Ship Canal. The canal company had purchased the property of the Bridgewater canals, which subsequently went into liquidation. It had two kinds of stock. On the common shares which were issued at the organization of the company only about one-third of the par value had been paid up, while the preferred shares which were issued some years later had been paid in full. After repayment to the shareholders, common and preferred, of the amounts which they had paid on their shares, there still remained about five hundred thousand pounds concerning the distribution of which the litigation took place. Mr. Justice North in the chancery division decreed that the distribution should be made in accordance with the amounts paid up. This was affirmed by the court of appeal, but reversed by the house of lords.

Lord MacNaghten, who delivered one of the opinions in the house of lords, says: "Then the preference shareholders (who had paid their shares up in full) say to the ordinary shareholders (who had not), 'We have paid up the whole of the amount due on our shares; you have paid but a fraction on yours. The prosperity of a company results from its paid up capital; distribution must be in proportion to contribution. The surplus assets must be divided in proportion to the amounts paid up on the shares.' That seems to me to be ignoring altogether the elementary principles applicable to joint stock companies of

this description. I think it rather leads to confusion to speak of the assets which are the subject of this application as 'surplus assets' as if they were an accretion or addition to the capital of the company capable of being distinguished from it and open to different considerations. They are part and parcel of the property of the company, part and parcel of the joint stock or common fund which at the date of the winding up represented the capital of the company." The same course was taken in the case, *In re Weymouth, &c., Steam Packet Company (1891), 1 Ch. 66; 60 L. J. Ch. 93,* and *In re Hodges Distillery Co., L. R. 6 Ch. 51; 40 L. J. Ch. 21.*

The situation, however, is varied by the allegations of fraud contained in the bill. These allegations must be taken to be true for the purpose of this motion, and the court must, therefore, assume that the basis of the cause of action is an attempt to defraud the complainant and the other persons who became stockholders at the time Nichols received certificates for his shares. In *Hayward v. Leeson, 176 Mass. 310,* it was held that this particular variety of fraud avoided the transaction and rendered the fraud-doers liable to account for the profits made by them.

The admission of fraud charged in the bill, which is involved in the form of this motion, disposes of the two remaining objections taken to the bill. If there was in fact the fraud which is alleged the complainant is not estopped from objecting to the Nichols transaction or from demanding the cancellation of shares issued in pursuance of it, nor does it involve a rescission of the Nichols contract or a restoration of conditions. According to this view, Nichols gave nothing for his stock because his patents were worthless; hence no offer to restore is necessary, because there is nothing to restore.

The motion will therefore be denied.